## STANDARD OIL COMPANY *v.* GONSER.

1. JURY—SUBSEQUENT EXPLANATION OF INFORMAL VERDICT.
   Jury's explanation of its verdict in action for price of lubricating oils sold by plaintiff to defendant sawmill operator in which defendant interposed defense that oil was not as represented by plaintiff's agent, made several days after verdict had been rendered that the "oil was salable and that there is no cause for action" *held,* under the circumstances, not to have resulted in prejudice to defendant's right to a fair trial of the issue litigated.

2. TRIAL—AMENDMENT OF VERDICT—INTENT.
   The court may amend the verdict, correct manifest errors of form, and sometimes matters of substance to make it conform to the intention of the jury, where the intent is ascertainable.

3. CONTRACTS—WRITTEN CONTRACT OF SALE—ORAL REPRESENTATIONS —EVIDENCE.
   Testimony as to oral representations of plaintiff's products sold to defendant was properly stricken by the trial court, where such representations were not contained in the written contract of sale and tended to vary such contract, notwithstanding plaintiff had not pleaded that the contract was in writing, it being undisputed that there was an unambiguous written contract (Court Rule No 23 [1945]).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  53 Am Jur, Trial § 1094.
[3, 4]  20 Am Jur, Evidence § 1099.

4. Same—Parol Evidence.
   Parol evidence of prior negotiations and representations cannot be adduced to create an express warranty and thereby vary the terms of the contract.

5. Sales—Representations—Damages.
   Rejection of memoranda of sales of gasoline and oil to defendant, produced to show how much short of full time defendant's motor vehicles were out of use due to alleged defective quality of the oil, was proper, where such testimony related only to defendant's damages if oil were found to be defective and jury found it to have been salable oil.

Appeal from Schoolcraft; Runnels (Herbert W.), J. Submitted June 6, 1951. (Docket No. 34, Calendar No. 44,995.) Decided September 5, 1951. Rehearing denied December 3, 1951.

Action by Standard Oil Company against Milo F. Gonser to recover cost of oil. Set-off and recoupment by defendant against plaintiff for damages to machinery. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Herbert, Wood & Hood,* for plaintiff.

*George C. Quinnell* and *Edward H. Dembowski,* for defendant.

North, J. Plaintiff brought this suit to collect $512.03 for lubricating oil (and possibly some other motor lubricants) sold and delivered by plaintiff to defendant. An amended answer by defendant admitted the indebtedness, but by an amended claim of set-off and recoupment defendant sought judgment against plaintiff in excess of $18,000. On trial by jury plaintiff had verdict and judgment for $512.03, and defendant's claim of set-off and recoupment was denied. Defendant has appealed.

Defendant was engaged in cutting and hauling logs, running a sawmill and other incidental activi-

ties. In his business he used logging trucks, motor grader, tractors, and other motor vehicles. From July 24, 1944, to October, 1945, and even later, defendant, under 2 separate contracts, identical in terms, purchased of plaintiff lubricating oil used in his business. Through its agent plaintiff negotiated the sale to defendant, under a so-called quantity purchase and discount contract, of a grade of motor oil designated as Stanolube HD (heavy duty) for use in defendant's business. The agent is alleged to have represented to defendant that the particular brand of "oil was a high grade oil and better suited than any other oil for defendant's use in all of his motor vehicles;" and defendant further alleged:

"Plaintiff understood well the nature of defendant's business and the extent of his operations, and that he had to keep his trucks running to keep his sawmill running. Defendant then and there informed plaintiff that he, defendant, knew nothing about the motor oil sold by plaintiff known as Stanolube H.D. and that he, defendant, relied entirely upon the skill and judgment of plaintiff in recommending this oil for the use of defendant in his motor vehicles. Defendant informed plaintiff also of the fact that defendant desired to have a motor oil that would insure good operation in defendant's trucks during winter and summer and informed plaintiff that defendant necessarily must keep his trucks running in order to keep his sawmill running, and his crew of men working.

"Plaintiff assured defendant that Stanolube H.D. motor oil was suitable for use in defendant's trucks and other motor vehicles during either winter or summer and that said motor oil would reduce wear and give defendant smoother operation and longer life in his motors than any other oil."

Defendant alleged that he relied on the representations made to him; and that said "motor oil ap-

peared to be satisfactory to defendant until about the month of August, 1945," but that the oil defendant purchased of plaintiff in August, September and October, 1945, "was so defective that the motors showed signs of looseness after they had been operated approximately 500 miles under normal conditions and they became so loose that they could not be used any more after they had been driven approximately 1,500 miles after said defective oils had been put into said motors. Under normal conditions the said motors could be driven a distance of approximately 50,000 miles when suitable oil was used in them."

Defendant's cross-action for damages is bottomed "on account of the defective oil sold by plaintiff to defendant." Plaintiff, by its answer to defendant's claim of set-off and recoupment, denied the material allegations in defendant's pleadings. Numerous witnesses for the respective parties testified pro and con relative to defendant's set-off and recoupment claim. As above noted, the jury found against defendant.

Because of certain circumstances attending rendition of the jury's verdict, appellant claims error and asserts that "the court (should) have entered a judgment of 'no cause of action' as to both parties." While the jury was deliberating counsel stipulated that, because it suited the desire and convenience of the trial judge, the jury's verdict might be rendered in the absence of the judge and received by the clerk of the court. Later the jury announced the verdict as follows: "Oil was salable and that there is no cause for action." Each of the jurors signed the verdict, which the clerk reduced to writing. Thereupon the jurors were permitted to leave the courtroom without being requested to return. But about 2 hours later the clerk called the jurors back to the

courtroom and received from the jury the following explanation of the verdict:

"What we meant by our verdict when we said that the oil was salable and there was no cause for action, we meant that there was nothing wrong with the oil and that the plaintiff, Standard Oil Company, be paid by the defendant, Milo F. Gonser, the sum of $512.03, together with interest."

As we view the record the jury was not discharged when the above occurred in the latter part of the afternoon on Saturday. By telephone the following Monday the circuit judge directed the clerk to have the jury reassemble in court the following day. At that time, over objection of defendant's counsel, the court received from the jurors an explanation of their verdict, which was the same as above quoted. On direction of the trial judge, verdict disallowing defendant's claim of set-off and recoupment and allowing the claim of plaintiff was entered. Judgment for plaintiff in the amount of $512.03 and costs followed. Notwithstanding the apparent irregularities incident to the rendering and receipt of the jury's verdict, the result of the jury's deliberation clearly appears and no prejudice to defendant's right to a fair trial of the litigated issue resulted.

"Juries rarely give very formal verdicts; and inquiries of the jurors in court, and amendments for the purpose of putting in due form what the jury mean by their finding, are unobjectionable." *Sleight* v. *Henning* (syllabus), 12 Mich 371.

In *Re Sorter's Estate,* 314 Mich 488 (164 ALR 985), we quoted with approval from *Rabior* v. *Kelley,* 194 Mich 107, the following:

" 'There can be no doubt that where the intention of the jury is ascertainable the court may amend the verdict, correcting manifest errors of form, and

sometimes matters of substance, to make it conform to the intention of the jury.' "

Appellant's contentions that in view of the above a judgment of no cause of action should have been entered, and that prejudicial error resulted from the circuit judge calling the jury back into court, are without merit.

As another ground of error appellant asserts it was necessary under Court Rule No 23 (1945) "for plaintiff, in its defense to defendant's set-off and recoupment, to set forth in its answer that it claimed there was a written contract between the parties that excluded oral evidence of the verbal contract claimed by defendant in his set-off and recoupment." We are not in accord with appellant's contention, the record background of which is as follows: On direct examination of defendant he was asked and testified concerning certain alleged oral misrepresentations claimed to have been made to him by plaintiff's agent at the time negotiations were in progress for the contract purchase of the motor oil, Stanolube HD. On cross-examination of defendant he testified that all of his purchases of Stanolube HD were under written contracts signed by both parties. There were 2 such contracts, one for a year following July 24, 1944, and a second contract for the year beginning July 24, 1945. Duplicate copies of these contracts were produced by defendant, identified by him, his signatures thereon acknowledged, and received in evidence. There was no statement in either of these written contracts revealing any of the alleged oral misrepresentations to which defendant had testified on direct examination. Plaintiff urged that such oral statements claimed to have been made prior to the execution of the written contracts tended to vary the terms of the contracts; and plaintiff moved that all such testimony by defendant be

stricken. The motion was granted and the jury instructed to disregard all such testimony. Defendant objected to the court's ruling and urged that since plaintiff in its reply to defendant's claim of set-off and recoupment had not pleaded that the sale of the motor oil was under a written contract, plaintiff could not rely upon such fact at the trial of the case. As noted above, appellant's contention was that under Court Rule No 23 (1945) plaintiff was required to plead its claim of the contract having been in writing to justify that fact being urged in objection to the receipt of oral testimony or in support of a motion to strike such testimony. As just above noted, defendant had possession of his copies of each of the 2 written contracts, and he produced them incident to his cross-examination. In fact during his direct examination he had referred to the 1945 contract to refresh his recollection. Neither of the written contracts contained a warranty as to the quality of Stanolube HD, or any representation relative thereto. There is no claim that the written contracts were ambiguous. Under the record, and numerous decisions of this Court, the trial judge's ruling in striking the testimony as to alleged oral misrepresentations claimed to have been made prior to the execution of the written contracts was not erroneous.

"It is well established that where a written contract is clear and unambiguous, parol evidence of prior negotiations and representations cannot be adduced to create an express warranty and thereby vary the terms of the contract. (Citing numerous cases.)" *Salzman* v. *Maldaver,* 315 Mich 403 (168 ALR 381).

It is also asserted by appellant that the circuit judge was in error in sustaining plaintiff's objection to certain "gas and oil slips" which were given by the party from whom defendant purchased his gaso-

line to defendant's employees incident to purchases of gasoline and oil for the various motor vehicles used in defendant's business. It was urged by defendant that by this evidence of the amount of gasoline used in operating the respective motor vehicles it might be determined how much short of full time defendant's motor vehicles were out of use, it being claimed that (with the exception of loss of use from normal breakdowns, of which defendant had the usual variety) such loss of use was due to the defective quality of the lubricating oil plaintiff sold to defendant. In view of our conclusion herein it is unnecessary to pass upon the merits of this claimed error because, if competent or material at all, the proffered testimony related only to the amount of damages defendant allegedly suffered incident to the loss of the use of his motor vehicles. Obviously the jury did not reach that phase of defendant's claim. The exclusion of the "gas and oil slips" does not constitute a ground for reversal. Evidently appellant is cognizant of the foregoing, since, in his brief, it is said: "In the event that this case should be sent back for a new trial defendant desires a ruling on the question presented here."

The judgment entered in the circuit court is affirmed, with costs to appellee.

REID, C. J., and BOYLES, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.